FILED
2014 FEB 20 P 4:19
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>DAVID E. RETTER, JR. and<br>DANIELLE L. RETTER,<br><br>    Debtors. | Case No. 11-25888-GLT<br><br>Chapter 13 |
| JASON J. MAZZEI, ESQUIRE,<br>PAUL W. MCELRATH, ESQUIRE, and<br>MAZZEI & ASSOCIATES,<br><br>    Applicants,<br><br>v.<br><br>RONDA J. WINNECOUR, ESQUIRE,<br>Chapter 13 Trustee,<br><br>    Respondent. | Related to Doc. Nos. 76 and 86 |

## MEMORANDUM OPINION

Before this Court is the *Application for Compensation* [Doc. No. 76] (the "Application") filed by Mazzei & Associates (the "Mazzei Firm") requesting approval of $7,100 in attorneys' fees incurred during the period of September 20, 2011 through November 1, 2013. Previously, the Mazzei Firm received payment of $3,100 for services provided during this period as part of the Court's "no-look" chapter 13 fee. The Application now requests authority for additional payments totaling $4,000.

An initial hearing on the Application was held on November 27, 2013. The hearing was continued to January 9, 2014 to give the Debtors an opportunity to personally appear and provide information regarding the disclosures made by the Mazzei Firm concerning its fees

in this case. Based upon the record in this matter, including the statements of the Debtor, Mr. David Retter, the Court concludes that the Mazzei Firm failed to fully disclose its intent to charge the Debtors a fee in excess of $4,300. The Application is therefore denied to the extent it seeks to pay the Mazzei Firm an amount in excess of $4,300 for the period of September 20, 2011 through November 1, 2013.

## Background

The Debtors filed their voluntary petition for relief under chapter 13 of the Bankruptcy Code on September 20, 2011. Since that time, the Mazzei Firm has served as counsel of record for the Debtors. In its Rule 2016 disclosure statement (the "2016 Statement"), the Mazzei Firm indicated that it was accepting payment of $3,100 for legal services rendered during the case.[1] At the time of the filing, $3,100 represented the "no-look" amount, which is the maximum legal fee an attorney can collect without filing a fee application in this district.[2]

On November 1, 2013, the Mazzei Firm filed the Application, seeking payment of legal fees in the amount of $4,000 for the period of September 20, 2011 through November 1, 2013. Because the requested fees were in addition to the "no look" fee, the sum of all legal fees incurred since the inception of the case was $7,100.

Attached to the Application was a *Chapter 13 Bankruptcy Fee Agreement* dated July 27, 2011 (the "Fee Agreement") executed by the Debtors and the Mazzei Firm. The Fee Agreement is an 11-page engagement letter which purports to establish the terms and conditions of the firm's legal representation. It provides for a $3,100 fee for "legal representation in a

---

[1]   See Doc. 10. The 2016 Statement states that additional legal fees may be charged pursuant to the terms of a separate legal fee agreement which "enumerates all fees and costs in more specificity[.]"

[2]   See W.PA.LBR 2016-1, authorizing a "no look" fee for chapter 13 cases. In the event an attorney seeks fees in excess of the "no look" amount, it must file a fee application and obtain approval of the same from the Court. The "no look" fee was $3,100 when this case was originally filed, but it has since been modified to authorize payment of up to $4,000 in legal fees and an additional expense retainer of $500.

2

chapter 13 bankruptcy proceeding by Mazzei & Associates[.]" This fee covers a variety of the standard legal services provided in a chapter 13 case.[3] The Fee Agreement suggests that the $3,100 charge is a "base fee" and that additional compensation may be requested at an hourly rate. The Fee Agreement further provides that it can only be modified by a subsequent writing signed by all parties and counsel.

In September 2013, the Debtors required a replacement motor vehicle after their 2008 Chevrolet Silverado was irreparably damaged in an accident. After consulting with the Mazzei Firm, the Debtors entered into a stipulation with the chapter 13 trustee to use a portion of the insurance proceeds from the Chevrolet Silverado to purchase a new vehicle. [Doc. No. 71].

While meeting with the Debtors to review the stipulation on October 12, 2013, the Mazzei Firm obtained their signatures on a *Consent to Increase Attorney Compensation* form (the "Consent").[4] The Consent authorized the Mazzei Firm to increase its fee by $1,200 for a total legal fee of $4,300. At the November 27 hearing, Attorney Paul McElrath explained that the increase was precipitated by the added work performed in connection with the replacement of the motor vehicle. In exchange for the increase, the Consent stated that "no additional fees will be required … unless an order resulting from a fee application is entered by the Court." The Debtors further acknowledged their intention "that no fee application be presented by my attorney at this time, and that in lieu thereof, legal fees be increased to [$4,300.00]."

Six days after the Consent was executed, the Mazzei Firm began work on the Application. [See Application at Exhibit C].

---

[3] The Fee Agreement provides that the following services are available in exchange for the $3,100 fee: (a) the preparation and filing of schedules and the chapter 13 plan, (b) the review of post-filing correspondence, notices, and proofs of claim received prior to the Section 341 meeting of creditors, (c) representation at the Section 341 meeting, confirmation hearing, and discharge hearing; (d) counseling and advice to the client during and after the case; and (e) receiving and making all necessary letters, telephone calls, and electronic messages in furtherance of the above activities. [Fee Agreement at p. 2-3].

[4] A copy of the Consent is attached as Exhibit B to the Fee Application.

3

At the November 27 hearing on the Application, the Court expressed several concerns. It questioned whether the Mazzei Firm disclosed the impending Application to the Debtors when obtaining their signature to the Consent. The Court also sought an explanation for certain charges on the firm's invoices, including an increase in Attorney McElrath's hourly rate from $195 to $300 on August 1, 2013. Although Attorney McElrath provided some details, the Court recognized that the issue of adequate disclosure could only be resolved by questioning the Debtors directly. The Court therefore continued the hearing to a time when the Debtors could personally appear. The Mazzei Firm also was directed to file a supplemental statement concerning the representations it made to the Debtors in connection with the Consent.

In a *Narrative Statement* [Doc. No. 86] filed on December 13, 2013 (the "Narrative"), the Mazzei Firm explained that it created the Consent form to address the increase in the "no look" fee from $3,100 to $3,700. The form served as an acknowledgement by debtors that an additional fee application was not required to obtain the increase in attorneys' fees. The Narrative also indicates that Attorney McElrath's rate was increased to $300 because he became "lead counsel" in this case on August 1, 2013.

Mr. Retter appeared at the Court's continued hearing on January 9, 2014. He stated that he understood the Mazzei Firm would receive $4,300 for its work on his bankruptcy case, consistent with the terms of the Consent. Mr. Retter was unaware that he was being charged legal fees in excess of $7,000 in the bankruptcy case. Although the fees were nearly double what he expected to pay, Mr. Retter indicated no opposition to the Application.[5]

---

[5] Mr. Retter appeared credible on most issues he discussed with the Court. However, his support for the Fee Application did not seem genuine. When it was revealed that the firm's legal fees were $4,000 more than he originally anticipated, Mr. Retter displayed no outward sign of surprise, as would be expected.

4

## Discussion

Pursuant to Section 330(a)(4)(B) of the Bankruptcy Code, the Court may allow "reasonable compensation" to the debtor's attorney for representing the interests of the debtor in the bankruptcy case. The Court may base the award upon consideration of the benefit and necessity of such services, as well as other factors. 11 U.S.C. §330(a)(4)(B). The Court has an independent duty to review fee applications submitted by professionals. In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 841 (3d Cir. 1994) (finding that the bankruptcy court has the power and duty to review fee applications, notwithstanding the absence of objection); Matter of Affinito & Son, Inc., 63 B.R. 495, 497 (Bankr. W.D. Pa. 1986) ("The [b]ankruptcy [c]ourt has the independent authority and responsibility to determine the reasonableness of compensation"). Fees requested by counsel in a fee application should be consistent with the terms of the fee agreement and the Fed. R. Bankr. P. 2016(b) disclosure statement. See In re Murray, 2007 WL 2317523 (Bankr. E.D. Pa. Aug. 6, 2007) ("The significance of the conflict between the [fee application] and the 2016(b) [s]tatement should not be minimized. . . . [C]ounsel's right to payment is grounded in his or her retention agreement with the debtor while also regulated by the operation of 11 U.S.C. § 330 and related provisions of the Bankruptcy Code and rules of court").

The Fee Agreement specified the terms of the initial agreement between the parties. Under the engagement, the Mazzei Firm agreed to accept a "base legal fee" of $3,100 to pursue the Debtors' chapter 13 case. If the sum of all legal fees (calculated at an hourly rate) exceeded $3,100, the parties agreed that the Mazzei Firm could file a fee application for the excess.

The Consent modified the terms of the engagement. In place of the "base legal fee," the parties agreed to a new fee of $4,300. Based upon Mr. Retter's statements and the plain

language of the Consent, the Court finds that this was intended to be an "all-inclusive" fee for legal services rendered through October 12, 2013, rather than an increase in the "base" or minimum "no look" fee.

The Consent establishes the basis for a "quid pro quo" arrangement between the Debtors and their counsel. In exchange for a $1,200 increase in the legal fee, the Mazzei Firm agreed not to pursue a fee application. See Consent ("It is my intention that no fee application be presented by my attorney at this time, and that *in lieu thereof*, legal fees be increased to the amount stated above" (emphasis added).

Mr. Retter confirmed this was the reason he signed the Consent. Additional legal work was necessary to replace a damaged motor vehicle, and he understood this to be the basis for a $1,200 increase in fees. Mr. Retter expected to pay no more than $4,300 for all legal services provided at that time. Until the January 9 hearing, Mr. Retter was unaware that the Mazzei Firm charged more than $7,100 for its work on his case.

At the January 9 hearing, Attorney Jason Mazzei downplayed the importance of the Consent. He stated that it was created when the "no look" fee increased from $3,100 to $3,700.[6] According to Attorney Mazzei, the form allows the firm to avail itself of an increase in the "no look" fee by updating the base fee specified in a client's engagement letter.[7] He denied that it prevented the law firm from filing a fee application for work previously done in the case.

The Mazzei Firm's justification is not compelling. To begin, the Consent is not limited to the "no look" or "base fee." By its own terms, it provides for compensation "**beyond**

---

[6] The "no look" fee was increased to $3,700 effective March 1, 2012, pursuant to General Order #2012-2 entered by the Court on January 27, 2012.

[7] See also Narrative (explaining that the Consent "was originally created due to a new procedure intending to streamline the increasing of fees when the 'no look' fee increased from $3,100.00 to $3,700.00.").

6

the maximum 'no look' legal fee" for services rendered during the bankruptcy case. It provides compensation which supplements the "no look" fee. Indeed, the $4,300 fee in the Consent exceeds the current "no look" amount by $300. Because the Mazzei Firm could not receive payment of $4,300 without filing a fee application, the Consent serves no purpose if it was simply intended to reflect an increase in the "no look" fee.

More importantly, the "no look" fee was no longer relevant when the Debtors executed the Consent. By the time the Debtors contacted the Mazzei Firm in September 2013, the firm already accrued over $5,600 in legal charges.[8] It was therefore apparent – before any work began on the motor vehicle stipulation – that additional legal fees could only be paid through an approved fee application.

In light of these facts, the Court finds the Consent to be an amendment to the Fee Agreement. By its very terms, the Consent modifies the parties' pre-existing arrangement into a flat-fee of $4,300 for legal services rendered through the date of the Consent. Moreover, the Debtors were not informed of any additional fees, nor were they warned that a fee application was imminent when they executed the Consent. For these reasons, the Court denies the Application to the extent it is inconsistent with the terms of the Consent.

Even if the Consent did not modify the fee arrangement, the Court identified a number of other deficiencies that prevent it from granting the Application *in toto*. After considering the nature, extent, and value of the legal services in light of all relevant factors, including those enumerated in Section 330(a)(3), the Court cannot authorize payment of additional legal fees based upon the findings outlined below.

---

[8] According to the billing statements attached as Exhibit C to the Fee Application, the sum of all legal fees incurred from September 2011 through August 2013 was $5,653.

7

### 1. The Application Contains Inaccurate Data

The Court notes that the Application's summary of timekeeper charges (the "Summary") contains inconsistent and inaccurate information.[9] Specifically, the Summary fails to account for the total fees attributable to each timekeeper. While an individual's fees are typically derived by multiplying his/her hourly rate against the number of hours worked, the Summary does not utilize this approach.

After sampling the data in the Summary, the Court finds that the Summary's "Total Dollars" column overstates the charges in some instances and understates the fees in others. To illustrate the discrepancy, the Court recreates the Summary below by comparing the amounts "reported" by the Mazzei Firm against the "actual" amounts that should exist if the numbers are properly calculated:

---

[9]   Fee Application at Exhibit C, p. 13.

| Timekeeper | Billing Rate | Total Hours | "Reported" Total | "Actual" Total | Differential |
|---|---|---|---|---|---|
| Allen | 195 | 1.7 | 0 | 331.5 | (331.50) |
| Ambrose | 75 | 0.5 | 52.5 | 37.5 | 15.00 |
| Cameron | 75 | 5.6 | 307.5 | 420 | (112.50) |
| Carter | 75 | 0.0 | 15 | 0 | 15.00 |
| Eger | 75 | 0.2 | 0 | 15 | (15.00) |
| Ellis | 75 | 0.2 | 0 | 15 | (15.00) |
| Gillespie | 75 | 1.1 | 112.5 | 82.5 | 30.00 |
| Kubis | 75 | 0.2 | 30 | 15 | 15.00 |
| Marple | 75 | 1.7 | 15 | 127.5 | (112.50) |
| Mazzei | 300 | 15.1 | 1320 | 4530 | (3,210.00) |
| McElrath | 195 | 3.1 | 58.5 | 604.5 | (546.00) |
| McElrath | 300 | 2.8 | 1080 | 840 | 240.00 |
| Moran | 75 | 0.1 | 420 | 7.5 | 412.50 |
| Munroe | 75 | 0.1 | 0 | 7.5 | (7.50) |
| Polk | 75 | 2.7 | 187.5 | 202.5 | (15.00) |
| Porter | 75 | 0.1 | 195 | 7.5 | 187.50 |
| Williams | 75 | 2.9 | 67.5 | 217.5 | (150.00) |
| Willis | 195 | 1.0 | 1677 | 195 | 1,482.00 |
| Wright | 75 | 0.1 | 15 | 7.5 | 7.50 |

As shown above, the Summary incorrectly states the total fees charged for each of the listed timekeepers. Moreover, the sum total of all charges contained on the chart is $5,740.50, which is $1,977 less than the amount requested in the Application. Based on this limited review, the Court concludes that the Summary is completely unreliable and fails to comply with W.PA.LBR 2016-1(c)(4).

2.  **Billing Rate of Attorney McElrath**

The fees of Attorney McElrath are billed at two disparate rates. From November 2012 through March 2013, Attorney McElrath's fees were charged at the rate of $195 per hour. In September 2013, his rate increased to $300. The Mazzei Firm contends that its hourly rates are based on job function rather than on the identity of the person billing the time. In this

9

instance, the firm seeks payment for its associate attorneys at $195 per hour, and $300 for lead counsel. It maintains that Attorney McElrath worked as an associate attorney until August 1, 2013, when he assumed the role of lead attorney on the case. See Narrative. Attorney Mazzei confirmed that only one attorney can serve as "lead counsel" in these cases.

Unfortunately, the firm's explanation does not match the facts of this case. Attorney Mazzei was originally designated as the lead counsel in this case. Assuming that Attorney McElrath replaced him on August 1, there was no corresponding decrease in Attorney Mazzei's rate to reflect his reduced role. Rather, Attorney Mazzei continued to bill the Debtor at the rate of $300 after August 1, 2013.[10] The Debtors were therefore charged for the work of two "lead" attorneys in their case, when it was acknowledged that only one was necessary.

The Court finds no basis in the Fee Agreement authorizing the firm to unilaterally increase Attorney McElrath's rate by 54%. This was not an annual adjustment of the firm's rates, nor did it result from Attorney McElrath acquiring certain credentials that allowed him to charge a higher rate. Furthermore, the Mazzei Firm has not offered proof that the Debtors were aware that the rate would increase substantially after August 1, 2013. While the firm allegedly sent letters to its clients informing them of Attorney McElrath's ascension into the lead role, they were not told of the economic impact. While there may be instances where the skills of multiple partner-level attorneys are required, this particular case did not present unusual or complex issues that would warrant the use of more than one senior lawyer.

### 3. Excessive Staffing on Cases

The Application essentially covers the first two years of this case. During that time, the Mazzei Firm encountered routine issues, but nothing that would be considered

---

[10] Attorney Mazzei billed time to the Debtors' file between October 14-16, 2013. In each instance, his time was charged at $300 per hour.

contentious.[11] Despite a relative lack of activity, 17 different timekeepers billed time to the file. This equates, on average, to a new timekeeper every 1.5 months. Regardless of whether this is an intentional billing strategy or simply reflects high employee turnover, the sheer number of timekeepers suggests that the Mazzei Firm is not efficiently staffing the case. As each new timekeeper begins work, they necessarily spend time acquainting themselves with the file. This would appear to be replicate work done by prior employees. Since the Bankruptcy Code prohibits compensation for duplicative services, the Court will strike charges incurred to acclimate a new timekeeper to the case.

### 4. Overhead Charges

The Court also finds that several overhead charges have been improperly included. The Application identifies two "bookkeepers" who billed time prior to the Petition Date for purely administrative work.[12] These charges did not benefit the Debtors or advance their bankruptcy case.

### Conclusion

The Court could have denied the Application outright due to the inaccurate information contained within the timekeeper Summary. Due to its previous findings with respect to the Consent, the Court need not reach this result. Having determined that the parties agreed to a "flat fee" of $4,300 as a modification to the Fee Agreement, and concluding that such fees and expenses are reasonable under the circumstances of this case, the Court approves the Application

---

[11] The activity in this case has been relatively sparse. The Debtors commenced one adversary proceeding which was uncontested. Aside from filing two amended plans and responding to a motion regarding delinquent taxes, the case has been uneventful from a procedural standpoint.

[12] Fee Application at Exhibit C. Timekeeper Ellis charged time on July 28, 2011 to enter information into the firm database. On September 13, 2011, Timekeeper Wright billed time for a phone call with the Debtor to obtain payment of the firm's retainer.

11

for the purposes of awarding an additional $1,200 in compensation to the Mazzei Firm. To the extent the Application requests fees and expenses in excess of this amount, it is denied.

Dated: February 20, 2014

_____
GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE